UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

KEVIN DeVILLION,

Plaintiff,

v.

FRANK MILCZARK, RICK HARRY, ANITA SCHLANK, JOANNE FAIRFIELD, TOM LUNDQUIST, and JOHN MANDERNACH,

Defendants.

Civil File No. 01-617 (DWF/SRN)

**REPORT AND RECOMMENDATION**

Kevin DeVillion, Minnesota Sexual Psychopathic Personality Treatment Center, 1111 Highway 73, Moose Lake, Minnesota, 55767, Plaintiff, pro se.

Margaret H. Chutich, Assistant Minnesota Attorney General, 445 Minnesota Street, #900, St. Paul, Minnesota, 55101-2127, for Defendants.

SUSAN RICHARD NELSON, United States Magistrate Judge

Plaintiff, an inmate at the Minnesota Sexual Psychopathic Personality Treatment Center, ("MSPPTC"), has brought this action under 42 U.S.C. § 1983, seeking relief for alleged violations of his federal constitutional rights. Defendants, various employees of the State of Minnesota, have filed a motion seeking to have Plaintiff's complaint dismissed pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim on which relief can be granted. The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, it will be recommended that Defendant's motion to dismiss be GRANTED, and that this action be DISMISSED.

NOV 07 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

During the 1980s, Plaintiff was convicted on three separate occasions for criminal sexual conduct. Each offense involved a young boy. While he was serving his prison sentence for his third offense, civil commitment proceedings were brought against him. A state district court found Plaintiff to be a "psychopathic personality" under Minnesota law, and ordered that he be committed to state custody for an indeterminate period. Plaintiff appealed that decision, but the Minnesota Court of Appeals and the Minnesota Supreme Court upheld the commitment order. In re DeVillion, No. C8-91-1070 (Minn.App. 1991), 1991 WL 191653 (unpublished opinion), review denied, November 26, 1991. As far as the Court can tell, Plaintiff has been civilly committed for at least the last ten years, and there is no indication that he will be freed anytime soon. As previously noted, he is currently confined at the MSPPTC in Moose Lake.

Plaintiff commenced the present action on April 9, 2001, by filing a "Complaint For Violation Of Civil Rights Under 42 U.S.C. § 1983." (Docket No. 1). Plaintiff is attempting to sue six individuals who work at the MSPPTC. Defendant Frank Milczark is the Chief Executive Officer; Defendant Rick Harry is the Chief Operating Officer of the Minnesota Sex Offender Program; Defendant Anita Schlank is the Clinical Director; Defendant Joanne Fairfield is the Assistant Clinical Director; Defendant Tom Lundquist is a psychologist; and Defendant John Mandernach is a "group supervisor."

The facts on which Plaintiff's claims are based, as alleged in his complaint, are as follows:

Sometime prior to April 5, 2001, (the date when Plaintiff signed his complaint), Defendant Fairfield obtained some unidentified material from a trash receptacle at the

MSPPTC. (The complaint does not identify the exact location of the trash receptacle or the nature of the material that was seized.) Based on what she found, Fairfield made some type of allegedly "false allegations on [Plaintiff's] chart." (Complaint, [Docket No. 1], p. 3b, § IV, ¶ 3.) Fairfield did not conduct any type of investigation concerning the material she found, nor did she give Plaintiff an opportunity to respond to the notations she placed on his chart. (Id., ¶s 5, 6.)

As a result of Fairfield's notations, Plaintiff was "punished." (Id., ¶ 4.) His punishment consisted of "5 days level room restriction, which meant [that he was] unable to work, unable to go to canteen, [and] not allowed to participate in recreational activities." (Id., ¶ 6.)

No other facts are alleged in the complaint. The remaining allegations in the complaint are legal conclusions – e.g., that Defendants Fairfield, Lundquist and Mandernach "sentenced plaintiff without due process," (id., ¶ 7); that Defendant Fairfield "violated Plaintiff's right to privacy;" (id., ¶ 8); and that Defendants Schlank, Milczark, and Harry acted with "willful indifference to Plaintiff's constitutional and statutory rights" by failing to investigate the actions of their subordinates, (presumably Fairfield, Lundquist and Mandernach), (id., ¶s 9-11). Other legal conclusions alleged in the complaint include the following: (i) that by "digging in Plaintiff[']s trash," Defendant Fairfield violated the constitutional prohibition against unreasonable searches and seizures, (id., ¶ 13); (ii) that "Defendant's conduct has no clinical value," (id., ¶ 14); (iii) that Defendants acted under color of state law in violating Plaintiff's constitutional and statutory rights, (id., ¶ 15); and that Defendants' actions constitute "maltreatment" as defined by Minnesota law, (id., ¶ 18).

Plaintiff is seeking a declaratory judgment holding that Defendants have violated his constitutional rights, including his right to due process. He is also seeking compensatory damages in the amount of $250,000, and punitive damages in the amount of $250,000.

## II. STANDARD OF REVIEW

Defendants' motion to dismiss Plaintiff's complaint is brought under Fed. R. Civ. P. 12(b)(6). A complaint will be dismissed pursuant to that Rule "'if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations'" that have been pleaded. Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995), quoting Alexander v. Peffer, 993 F.2d 1348, 1349 (8th Cir. 1993) and Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In assessing a motion brought under Rule 12(b)(6), a court must liberally construe a pro se complaint. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). The court must "review the complaint most favorably to the non-moving party," bearing in mind that "[c]ivil rights pleadings should be construed liberally." Frey, 44 F.3d at 671. The complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Holloway v. Lockhart, 792 F.2d 760, 761-62 (8th Cir. 1986).

The court also "must presume that the factual allegations of the complaint are true and accord all reasonable inferences from those facts to the non-moving party." Id.; see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). This does not mean, however, that the court must accept the legal conclusions set forth in the plaintiff's complaint. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court does not "blindly accept the legal conclusions drawn by the pleader from the facts"). Conclusory allegations -- that is, allegations that are simply legal conclusions unsupported by specific factual allegations --

are not sufficient to state an actionable claim for relief. Frey, 44 F.3d at 671 ("[a]t the very least... the complaint must contain facts which state a claim as a matter of law and must not be conclusory"); Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law"); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) ('[a]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions").

Under Rule 12(b)(6), the court is not to rely on material outside the complaint unless the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Although both sides in the present case have submitted various declarations and exhibits in support of their respective positions, the Court finds that Defendants' motion to dismiss can be fully resolved by examining only the complaint itself. Because Defendants' motion can be decided without resorting to any of the various evidentiary materials submitted by the parties, Defendants' motion will not be treated as a motion for summary judgment. Thus, the Court must simply decide whether, assuming all of the facts alleged in the complaint are true, Plaintiff has pleaded a legally cognizable claim for relief.

## III. DISCUSSION

To state an actionable claim for relief under 42 U.S.C. § 1983, as Plaintiff is attempting to do here, the claimant must allege facts showing that the named defendant(s) violated the claimant's federal constitutional rights while acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff has clearly alleged, (and Defendants do not deny), that Defendants were acting under color of state law at all times relevant to this

action. The issue to be resolved then, is whether the facts alleged in the complaint, if true, demonstrate that Defendants violated Plaintiff's federal constitutional rights.

Defendants suggest that Plaintiff is seeking relief for two alleged violations of his constitutional rights – (1) that Defendants violated Plaintiff's rights under the Fourth Amendment's "search and seizure" clause, by searching through his garbage and seizing materials found there; and (2) that Defendants violated Plaintiff's constitutional right to due process by punishing him without conducting any investigation or any hearing of any kind. The Court agrees that those are the only two possible constitutional violations implicated by the limited factual allegations pleaded in the complaint.[1]

A. Fourth Amendment Claim

The first clause of the Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." It is well-settled, however, that the protections of the Fourth Amendment do not extend to materials that have been discarded as trash. California v. Greenwood, 486 U.S. 35, 39-42 (1988); United States v. Michaels, 726 F.2d 1307, 1312-13 (8th Cir.), cert. denied, 469 U.S. 820 (1984).

---

[1] Plaintiff contends that there is a third constitutional violation that he describes as a violation of his First Amendment right to marry and correspond with his wife. (See Plaintiff's Memorandum filed June 26, 2001, [Docket No. 16], at p. 4.) However, the facts alleged in the complaint clearly fail to support any such claim. The complaint includes no reference to Plaintiff's wife, or any attempt by Plaintiff to correspond with his wife. Moreover, even if the complaint alleged that the unidentified material taken from Plaintiff's trash was a letter from his wife, (as indicated by several of the submissions of record), that would not be enough to support any First Amendment claim. There are simply no facts in the complaint, (or anywhere else in the record), suggesting that any of the Defendants made any effort to interfere with Plaintiff's ability to correspond with his wife.

Here, as in Michaels, it clearly appears that the material at issue, (whatever it may have been), was put into a trash or garbage receptacle "'for the express purpose of having strangers take it;'" and it is therefore "'inconceivable that [Plaintiff] intended to retain a privacy interest in the discarded objects.'" Id. at 1313, quoting United States v. Reicherter, 647 F.2d 397, 399 (3rd Cir. 1981). If Plaintiff "'had such an expectation, it was not reasonable.'" Id. Whatever it was that Plaintiff threw away, he gave up any rightful expectation that it would remain private when he placed it in a trash receptacle to be removed by someone else. Because the trash at issue was not subject to any Fourth Amendment privacy protection, none of the Defendants can be held liable in a § 1983 action for taking possession of it.

Furthermore, even though Plaintiff is not presently serving a prison sentence, he is in state custody; and if the garbage of an average unincarcerated citizen is not covered by any Fourth Amendment privacy protection, the same must be even more true for the garbage of a person who, like Plaintiff, is being lawfully confined by the state. Plaintiff contends that as a civilly committed individual, he "retain[s] the same rights as an ordinary/free citizen," (Complaint, p. 3, § IV, ¶ 1); but that is simply not correct. Plaintiff apparently fails to recognize that, because of his civil commitment, he has been legally divested of many of the rights enjoyed by other citizens. His freedom of movement from place to place obviously has been dramatically restricted, and his remaining constitutional rights are subject to greater restrictions as well. As a result of his lawful confinement by the state, Plaintiff does not have the same privacy rights as an undetained individual. See Bell v. Wolfish, 441 U.S. 520, 546 (1979) ("[a] detainee simply does not possess the full range of freedoms of an unincarcerated individual"). If the Constitution does not guarantee

the privacy of discarded property in general, then property discarded by an individual in state custody certainly is not entitled to any privacy protection.

B. Due Process Claim

To maintain an actionable Fourteenth Amendment due process claim, a plaintiff must allege, (and ultimately prove), that he has been deprived of some constitutionally protected interest. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"). In this case, Plaintiff claims that Defendants violated his due process rights by placing him on "5 days level room restriction," without providing him the due process protections of a complete investigation and a fair hearing. He apparently believes that he has a liberty interest in being free from punishment imposed by the state, and that Defendants therefore could not punish him without affording him the procedural protections of due process.

Defendants contend that Plaintiff's due process claim is governed by, and barred by, the principles discussed in Sandin v. Conner, 515 U.S. 472 (1995). In that case, the Supreme Court noted that "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Id. at 485 (emphasis added). In other words, the imposition of disciplinary sanctions by prison officials is a normal, expectable, and acceptable aspect of every prison sentence. Thus, the Court concluded in Sandin, a convicted prisoner cannot sustain a due process claim based on commonplace forms of disciplinary punishment. A prisoner is deprived of a protected liberty interest, and is therefore entitled to due process, only when he has suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life." Id. at 484.

Most federal courts have found that the due process analysis prescribed by Sandin should not be applied in civil rights actions brought by pre-trial detainees. See e.g., Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000); Rapier v. Harris, 172 F.3d 999, 1004-05 (7th Cir. 1999). Because pre-trial detainees are not serving prison sentences, they do not have to expect the type of common disciplinary sanctions that are deemed (per Sandin) to be an inherent aspect of a prison sentence. This reasoning seems to equally applicable to civilly committed detainees. Such detainees, like pre-trial detainees, are not serving prison sentences, and are therefore not automatically subject to the normal punitive sanctions that inevitably accompany prison sentences. Thus, the Court rejects Defendants' contention that Plaintiff's due process claim is governed by Sandin.

This does not mean, however, that Plaintiff is necessarily entitled to the constitutional protection of due process for any sanction imposed during the term of his civil commitment. The Court cannot find any good reason why civilly committed detainees should have broader due process rights than those guaranteed to pre-trial detainees under Bell v. Wolfish, supra.[2]

In Bell, the Supreme Court held that pre-trial detainees cannot be "punished" without being afforded the procedural protections of due process. 441 U.S. at 535 ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). The Court added, however, that not every sanction imposed against a pre-trial detainee can be considered a form of punishment that

---

[2] If anything, civilly committed detainees probably are entitled to less due process protection than pre-trial detainees, because civilly committed detainees have already received the benefit of a complete court trial before being confined, whereas pre-trial detainees have usually had – at most – only the benefit of a probable cause hearing.

implicates due process concerns. In the words of the Court, "'[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned.'" Id. at 539, n. 21, quoting Ingraham v. Wright, 430 U.S. 651, 674 (1977).

Here, the Court finds that the sanctions imposed against Plaintiff, as described in his complaint, do not surpass the "de minimis" threshold. Plaintiff has alleged only that, for a period of five days, he was "unable to work, unable to go to canteen, [and] not allowed to participate in recreational activities." (Complaint, p. 3b., § IV, ¶ 6.) While Plaintiff was doubtlessly displeased by these additional restrictions on his freedom, they are not serious enough to support a § 1983 due process claim.

The inadequacy of Plaintiff's complaint can be easily seen by comparing the facts alleged here with the facts of Smith v. Copeland, 87 F.3d 265 (8th Cir. 1996). Smith was a § 1983 action brought by a pre-trial detainee, (a county jail inmate), who sought relief for alleged violations of his right to due process. He alleged that he was placed in "segregated confinement" for four days. He further alleged that the toilet in his isolation cell overflowed, and "that he was 'made to endure the stench of [his] own feces and urine'" during the four days that he was in segregated confinement. Id. at 268.

The deprivations described in Plaintiff's complaint here are far less onerous than those suffered by the plaintiff in Smith. The instant Plaintiff has alleged that he went five days without work, canteen privileges, and recreation, while Smith allegedly endured four days of complete isolation, during which he lived in "raw sewage." Yet the Eighth Circuit found Smith's due process claim to be inadequate, as a matter of law. The Court held that even Smith's "'raw sewage' allegation" amounted to no more than "a de minimis imposition" that did not "implicate constitutional concerns." Id. If Smith's circumstances lacked

constitutional significance, the same must be true here.

Thus, the Court concludes that the deprivations described in Plaintiff's complaint amount to no more than a "de minimis imposition." Because Plaintiff has failed to allege that any constitutionally significant punishment was administered against him, he has failed to state an actionable due process claim.

C. State Law Claims

Finally, the Court notes that Plaintiff's complaint refers to Minn.Stat. § 144.651, subd. 14 and subd. 31, which suggests that he may be seeking relief for some alleged violation of his rights under state law. Although state law claims can sometimes be heard and decided in a federal court pursuant to the supplemental jurisdiction statute, (28 U.S.C. § 1367(a)), any state claims that Plaintiff may be attempting to bring in his current complaint should not be entertained here.

Under 28 U.S.C. § 1367(c)(3), a federal district court may decline to exercise supplemental jurisdiction over state law claims when the court has "dismissed all claims over which it has original jurisdiction." This subsection of the statute is directly applicable here, as it has already been determined that Plaintiff's attempted federal constitutional claims must be dismissed. "[W]hen federal claims are dismissed before trial, the normal practice is to dismiss pendent [state law] claims." Stokes v. Lokken, 644 F.2d 779, 785 (8th Cir. 1981); see also, Save Our Health Organization v. Recomp of Minnesota, 829 F.Supp. 288, 293 (D.Minn. 1993), aff'd, 37 F.3d 1334 (8th Cir. 1994).

The instant case has not progressed beyond the pleading stage, so the interests of "judicial efficiency, convenience, and fairness to the litigants" will not be compromised by the federal court's refusal to entertain Plaintiff's state law claims. Condor Corp. v. City of

St. Paul, 912 F.2d 215, 221 (8th Cir. 1990). Furthermore, a federal district court would not be the most suitable forum for adjudicating Plaintiff's state law claims. Id. at 220 (stressing "the need to exercise judicial restraint and avoid state law issues wherever possible"). Thus, the Court concludes that it would not be appropriate to exercise supplemental jurisdiction over any state law claims that Plaintiff may be trying to bring. Those claims should be dismissed without prejudice, leaving Plaintiff free to pursue them in the state courts, if he chooses. See, Stokes v. Lokken, 644 F.2d at 785.[3]

## IV. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff's complaint seeking relief under 42 U.S.C. § 1983 fails to state a federal civil rights claim on which relief can be granted. Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6) must therefore be granted, and this action must be dismissed. Because Plaintiff's current civil rights lawsuit is not viable, all of his pending collateral motions in this action should be summarily denied.[4]

---

[3] Plaintiff should not misconstrue this ruling as an encouragement to seek relief in state court. As far as this Court can tell, he has no viable state law claim worth pursuing.

[4] Plaintiff has filed a motion for appointment of counsel, (Docket No. 2), a motion for default judgment, (Docket No. 8), a motion asking the Court to deny Defendants' motion to dismiss, (Docket No. 15), and a second motion asking the Court to deny Defendants' motion to dismiss, (Docket No. 19). In the absence of a viable claim for relief, these motions cannot be granted (or even entertained) here. The Court also specifically notes that (1) Plaintiff's motion for default judgment is unsustainable, because Defendants responded to his complaint within the 60-day period prescribed by Fed. R. Civ. P. 4(d)(3) and 12(a)(1)(B); (2) Plaintiff is not entitled to, or deserving of, appointment of counsel; and (3) the recommendation that Defendants' motion to dismiss be granted constitutes a de facto rejection of Plaintiff's two requests to deny Defendants' motion.

## V. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' motion to dismiss, (Docket No. 9), should be GRANTED;

2. Plaintiff's claims based on alleged violations of his federal constitutional rights should be dismissed with prejudice, and Plaintiff's claims based on state law should be dismissed without prejudice;

3. Plaintiff's motion for appointment of counsel, (Docket No. 2), should be DENIED;

4. Plaintiff's motion for default judgment, (Docket No. 8), should be DENIED;

5. Plaintiff's two motions asking the Court to deny Defendants' motion to dismiss, (Docket Nos. 15 and 19), should be DENIED; and

6. This action should be DISMISSED.

Dated: November 7, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.